James W. Parkman, III (PAR032)
Bar No.: 7770K27J
850 Corporate Parkway, Suite 100
Birmingham, AL 35242
Phone: 205-573-6001
Email: jim@jimparkmanlaw.com

John Spilotro
NV Bar No. 4134
319 South 3rd Street
Las Vegas, NV 89101
Phone: 702-683-9957
Email: spilotrolaw@gmail.com

Attorneys for Defendant
Afzal Khan

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA
LAS VEGAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Case No.: 2:24-CR-00088-GMN-NJK |
| ) | |
| AFZAL KHAN, ) | |
| *Defendant.* ) | |

## AMENDED MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE

COMES NOW, the Defendant, Afzal Khan, by and through his undersigned counsel, and pursuant to 18 U.S.C. § 3583(e)(1), respectfully moves this Honorable Court to Amend his Prior Motion for Early Termination of his term of Supervised Release. In support of the motion, the Defendant States as follows:

1. There seems to be some concern about handling money. As is standard with political campaigns, Mr. Khan does not personally handle campaign finances. All financial matters are managed by an established campaign committee, which includes a licensed CPA and

attorneys. All financial activity is properly reported to and overseen by the Federal Election Commission (FEC). Furthermore, Mr. Khan will not be listed on the bank account in which campaign funds are held.

2. There were also concerns that have arisen in regards to Mr. Khan being around other convicted felons. As you are aware, under Nevada law, individuals with prior felony convictions who have completed their sentence are eligible to vote. Mr. Khan will be appearing at events where individuals with felony records may be present, as part of his community outreach and platform to give voice to the formerly incarcerated population. For example, he has been asked to attend a First Chance Rally with the Republican Party and most of the First Chance people are convicted felons.

3. Another area of concern is involving travel. The real need for this Motion is because Mr. Khan will have to travel, often at the spur of the moment, not only to places in Nevada, but other states as well.

4. Due to the question about Mr. Khan's arrest, we would submit the following to show accurate events.

   a. 2014 – Initial Outreach and Departure: In late 2014, before any charges were filed, my lawyers proactively attempted to meet with the U.S. Attorney's Office (USAO) and FBI to address the business disputes that were arising. Unfortunately, those attempts to engage with authorities in 2014 were not successful – the meetings never materialized. During this same period, I began receiving serious death threats from irate clients over the business issues. I filed police complaints about these threats, but fearing for the safety of my wife and young children, I made the difficult decision to leave the United States in mid-2014. Importantly,

    this departure was entirely voluntary and occurred before any warrant or indictment – I was not fleeing arrest, as no charges had been filed yet. My sole motive was to protect my family from credible threats on our lives.

b. October 2014 and June 2015 – Warrant and Indictment in Absentia: On October 21, 2014, after I had already left for safety, a federal arrest warrant was issued for me related to the fraud allegations. I was unaware of the warrant at the time I departed. I want to note that I did not "skip out on" any court dates or warrants before leaving: the timeline shows the warrant and indictment came after I was already gone.

c. 2016 – Open Letter Offering Surrender: After learning of the charges against me, I made one of my first formal offers to surrender. In 2016, I sent an open letter to the New Jersey U.S. Attorney's Office, in which I proclaimed my innocence and agreed to return to the U.S. under certain reasonable conditions. Specifically, I asked that my family be allowed to return with me and be left behind due to our passports having expired. My intention was to come back and face the allegations in court, provided my family's well-being was secured. This 2016 letter is a matter of public record and was reported in the press. Unfortunately, the prosecutors did not accept these terms or facilitate my return at that time – the offer was essentially ignored.

d. 2014–2019 – Repeated Attempts to Surrender (Through Counsel and Direct Contact): Throughout the years 2014 through 2019, I consistently tried to negotiate my voluntary surrender with the authorities. My attorneys reached out multiple times to the AUSA handling the case (and other DOJ officials) offering

  to arrange my return. I also personally contacted the U.S. Attorney's Office and FBI agents from abroad. In fact, I have numerous recorded voice messages and communications where I was "practically begging" them to arrest me and let me come back. The response from the government was always the same: the only way they would take me back is if I immediately accepted a plea deal (essentially pleading guilty in advance) as a condition of surrender. They refused to allow me to return and contest the charges in a normal trial setting. Despite the government's lack of cooperation, I never stopped trying to come back and resolve the matter.

e. January 21, 2020 – Surrender at the U.S. Embassy (Abu Dhabi): With no acceptable response from the prosecutors even after the Fox News appeal, I took matters into my own hands at the start of 2020. On January 21, 2020, I walked into the U.S. Embassy in Abu Dhabi, UAE – the country where I had been living (which has no extradition treaty) – and surrendered myself to U.S. authorities. I brought my family with me to the embassy, hoping they could immediately start their process to come home as well. My surrender at the embassy was voluntary, unconditional, and peaceful. I immediately waived any right to contest extradition.

f. February 2020 – Return to U.S. Custody and Arrest Processing: Shortly after my embassy surrender, I was transported back to the United States. Around the first week of February 2020, U.S. Marshals flew me from the UAE to New Jersey. Upon arrival on U.S. soil, I was formally placed under arrest and processed.

g. August 19, 2020 – Even after pleading guilty, I was released September 2nd on

      bail; I remained on home confinement until I surrendered to Fort Dix prison on April 23, 2023.

h. December 2020 – September 2022 – Sentencing Delays (32 months waiting): When I pled guilty in August 2020, the court initially scheduled my sentencing for December 17, 2020. However, December 2020 came and went with no sentencing – it was postponed. In fact, my sentencing was delayed multiple times over the next two years. There were several reasons for this delay: the ongoing pandemic causing court backlogs, changes in court dates, and possibly protracted discussions over restitution and other matters. I continued to live on home confinement with an ankle monitor. In total, it took about 32 months from my surrender (January 2020) and over 24 months from my guilty plea for me to finally be sentenced.

i. Late 2023 – BOP Paperwork Issues and Release: I was allowed to surrender April 23, 2023. Upon surrender The Bureau of Prisons (BOP) couldn't calculate my correct time using the first step act which I qualified for and then lost my paperwork for the halfway house forcing me to spend an additional three months in custody.

j. 2023 – Relocation to Nevada, Reuniting with Family, and a Fresh Start: After regaining my freedom, I relocated to Nevada to be with my family. My wife and children had moved to Las Vegas while I was in custody. Nevada was an ideal place for us to resettle as we have history here, I visited here my entire adult life, we were engaged in 2009 and married in 2011 here. This move also helped remove me from the State of New Jersey, where the case arose, allowing us to

truly make a fresh start without the constant reminders of the past. Since early 2023, I have been living quietly in Las Vegas, NV, fully compliant with all conditions of my supervised release. I check in with my probation officer as required, have maintained a stable residence and employment, and have had no incidents or violations. My focus is entirely on rebuilding my life positively.

**WHEREFORE,** premises considered, Defendant respectfully moves this Honorable Court to grant this Motion for Early Termination of Supervised Release pursuant to 18 U.S.C. § 3583(e)(1), and issue an order of Early Termination of Supervised Release.

Done, this the 22nd day of April, 2025.

Respectfully submitted,

**/s/ James W. Parkman, III**

James W. Parkman, III (PAR032)
Bar No.: 7770K27J
850 Corporate Parkway, Suite 100
Birmingham, AL 35242
Phone: 205-573-6001
Email: jim@jimparkmanlaw.com

John Spilotro
NV Bar No. 4134
319 South 3rd Street
Las Vegas, NV 89101
Phone: 702-683-9957
Email: spilotrolaw@gmail.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**
**LAS VEGAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Case No.: 2:24-CR-00088-GMN-NJK |
| ) | |
| AFZAL KHAN, ) | |
| *Defendant.* ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 22nd day of April, 2025, I electronically filed the foregoing with the Clerk of Court via the CM/ECF system, which will cause copies to be electronically served upon all counsel of record.

/s/ **James W. Parkman, III**

James W. Parkman, III (PAR032)
Bar No.: 7770K27J
850 Corporate Parkway, Suite 100
Birmingham, AL 35242
Phone: 205-573-6001
Email: jim@jimparkmanlaw.com

John Spilotro
NV Bar No. 4134
319 South 3rd Street
Las Vegas, NV 89101
Phone: 702-683-9957
Email: spilotrolaw@gmail.com